# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-60363
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

February 28, 2020

Lyle W. Cayce
Clerk

TOMMY O'BRYANT,

      Plaintiff - Appellant

v.

WALGREEN COMPANY; CBRE GROUP, INCORPORATED; JOHN OR JANE DOES 1-10,

      Defendants - Appellees

Appeal from the United States District Court for the
Southern District of Mississippi
USDC No. 1:18-CV-8

Before STEWART, HIGGINSON, and COSTA, Circuit Judges.

PER CURIAM:*

Appellant Tommy O'Bryant ("O'Bryant") sued Appellees Walgreen Co. ("Walgreens") and CBRE Group, Inc. ("CBRE") for gross negligence for injuries sustained, including the amputation of his left leg, when an errant third-party driver pulled into a nose-in parking space in front of where O'Bryant stood, caused his truck to lurch over the curb, and pinned O'Bryant to the exterior

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-60363

wall of the store. The parties filed cross-motions for summary judgment; the district court granted the appellees's summary judgment motion and denied O'Bryant's summary judgment motion. For the reasons set forth herein, we AFFIRM the district court's decision.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Facts

On February 27, 2015, Plaintiff-Appellant Tommy O'Bryant, an Alabama resident, was a patron of the 2405 Pass Road Biloxi, Mississippi Walgreens store to have a prescription filled. At some point, O'Bryant went outside to smoke a cigarette and talk with his wife's cousin on the sidewalk abutting the east side of the store. A Dodge Ram truck, operated by Edward Kersh, pulled into a parking space in front of where O'Bryant stood. Kersh's foot slipped off of the brake pedal and onto the accelerator, causing his truck to jump the curb onto the sidewalk and into O'Bryant. O'Bryant was pinned against the brick wall of the store; the truck lurched with enough force to damage the wall. O'Bryant suffered significant injuries, including the amputation of his left leg.

### B. Procedural History

O'Bryant narrowly beat the three-year statute of limitations period when he filed his suit against Defendants-Appellees Walgreens and CBRE on January 4, 2018. In doing so, O'Bryant alleged Walgreens's negligence in failing to erect bollards and other safety barriers to prevent Mr. Kersh's car from jumping the curb and causing his injuries. Walgreens owns the store and parking lot where the incident occurred while CBRE is the company separately contracted by Walgreen Co. to repair and maintain Walgreen's store premises nationwide. All parties filed motions for summary judgment. Walgreens moved for summary judgment arguing that it owed no duty under Mississippi law to protect O'Bryant from negligent drivers and that the store and parking lot

2

were reasonably safe. O'Bryant opposed Walgreens's motion for summary judgment arguing that prior incidents at other stores made the instant accident foreseeable, giving rise to Walgreens's duty to O'Bryant. CBRE also moved for summary judgment arguing that it owed no duty to O'Bryant as it did not own, operate, manage, or control the Biloxi Walgreen Co. store where he was injured. O'Bryant also moved for partial summary judgment against the appellees, asserting the same arguments in opposition to Walgreens' motion, in addition to CBRE Group's knowledge of a dangerous condition. In the alternative, O'Bryant asked the court to strike the appellees' answer and enter a default judgment against them as a sanction for alleged discovery abuses. The district court granted the appellees' motions for summary judgment, though declining to rule on O'Bryant's motion to strike, finding that neither Walgreens nor CBRE owed O'Bryant a duty of care under Mississippi's premises liability law. Particularly, the court found that the exception to Mississippi's law created by *Cheeks v. AutoZone, Inc.*, 154 So. 3d 817 (Miss. 2014) was inapplicable because it found that the Biloxi Walgreens location took no steps to assume a duty of care to invitees by "(1) creating a situation that makes injury to a patron on the premises by a vehicle reasonably foreseeable *and* (2) undertaking extra measures to protect patrons entering or exiting the store." In granting the appellees' motions for summary judgment and denying O'Bryant's partial motion for summary judgment, the district court also elected to dismiss all of O'Bryant's claims with prejudice. O'Bryant timely appealed.

## II.    STANDARD OF REVIEW

A grant of summary judgment, and any interpretations of state law therein, are reviewed de novo. *McGruder v. Will*, 204 F.3d 220, 222 (5th Cir. 2000). The court must look beyond the pleadings and accept evidence favorable to the non-movant as true to determine if there is a genuine issue of material fact. Fed. R. Civ. P. 56(a); *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605,

611 (5th Cir. 2018). "A 'material' fact is one 'that might affect the outcome of the suit under governing law,' and a fact issue is '"genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Renwick*, 901 F.3d at 611 (internal citations omitted). This court may affirm the district court's grant of summary judgment for any reason supported by the record. *McGruder*, 204 F.3d at 222.

## III.    DISCUSSION

### A. Neither Walgreens nor CBRE owed O'Bryant a duty of care

While the parties are completely diverse, they agree that Mississippi law governs this action. Additionally, neither party argues that summary judgment was improper because there was a genuine issue of material fact. O'Bryant argues that the district court erred in granting summary judgment in favor of the appellees because the evidence was sufficient to show that Walgreens created a hazard by failing to erect bollards between the nose-in parking and the sidewalk. In his view, this brings his injuries within the realm of foreseeability and, in turn, trigger Walgreens's and CBRE's duty owed to him. We disagree.

To prevail in a premises liability action, the plaintiff must show: (1) he was owed a duty by the defendant; (2) the defendant breached that duty; (3) the plaintiff suffered damages; and (4) the breach was the proximate cause for the damages sustained. *See Galanis v. CMA Mgmt. Co.*, 175 So. 3d 1213, 1216 (Miss. 2015). When analyzing duty and breach, Mississippi courts conduct a three-step analysis: determine (1) the status of the plaintiff as either an invitee, a licensee, or a trespasser; (2) what level of duty is owed to the injured plaintiff; and (3) whether the landowner breached that duty. *See Cheeks v. AutoZone, Inc.*, 154 So. 3d 817, 822 (Miss. 2014).  A plaintiff is an invitee if he enters the premises of another according "to the express or implied invitation of the owner or occupant for their mutual advantage." *Id.* Both parties agree

4

that O'Bryant is an invitee. The next question for us to decide is what duty, if any, was owed to O'Bryant as a patron of the Biloxi Walgreens.

While the landowner cannot insure the invitee's safety, the landowner "does owe an invitee the duty to keep the premises reasonably safe, and when not reasonably safe, to warn only where there is hidden danger or peril that is not in plain and open view." *Id.* As with any negligence action, the complained-of action, or lack thereof, hinges on whether it falls within the realm of foreseeability. *Id.* at 823. With respect to the actions of third parties, "foreseeability is measured by all of the circumstances including the nature, condition and location of the defendant's premises and defendant's prior experience, bearing in mind that what is required to be foreseeable is the general nature of the event or harm, not its precise manner or occurrence." *Id.* (quoting *Crain v. Cleveland Lodge 1532, Order of Moose, Inc.*, 641 So.2d 1186, 1190 (Miss. 1994)).

Mississippi law is unequivocally clear that a store owner owes no duty to a store patron to erect barriers in order to prevent vehicles from driving into the store. *See Id.* Specifically, the Supreme Court of Mississippi has stated that,

> it cannot be contended with any degree of reason or logic that the owner of a store, . . . by failing to erect an impregnable barrier between the entrance of his store and an adjacent area where motor vehicles are driven and parked, should have anticipated that automobiles will be negligently propelled over the curb and across the sidewalk into the entrance of his store . . . . If as a matter of law such occurrences are . . . to be guarded against, there would be no limitation on the duty owed by the owners of establishments into which people are invited to enter.

*Id.* Simply stated, "a premises owner has no duty to protect against runaway vehicles where such incidents would be unforeseeable." *Id.* at 824. But, where the landowner creates a hazardous condition and undertakes additional

measures to protect patrons entering or exiting the store, Mississippi law acknowledges that a landowner will have assumed the duty of protecting patrons from negligently driven vehicles. *See Buffalo Servs., Inc. v. Smith*, 227 So. 3d 1096, 1097–98 (Miss. 2017).

Now we must decide whether Walgreens assumed a duty to protect patrons from the errant driving of third parties. O'Bryant argues that evidence showing that Walgreens placed amenities such as a trashcan with an ashtray, a Redbox machine, and Blue Rhino stations at various points on the sidewalk around the immediate perimeter of the store suggest that Walgreens created a condition that invite patrons to linger on the sidewalk, thereby exposing them to the possibility of an errant driver accidentally lurching over the curb. He also argues that Walgreens's testimony that the purpose of the six-inch curb was to protect patrons on the sidewalk is sufficient to prove that Walgreens took additional steps to protect patrons from the errant driving of third parties. Finally, he presented evidence to the district court that the Biloxi Walgreens experienced a similar accident on July 7, 2014 when a vehicle hopped the curb and crashed into the building which substantiates Walgreens's knowledge of a dangerous condition.

Even when construing these facts in O'Bryant's favor, the circumstances in this present case are clearly distinguishable from those in other cases. In *Cheeks*, AutoZone stated that the bollards in that case were erected "as a 'safety measure' designed to protect pedestrians." *Cheeks*, 154 So. 3d at 824. Additionally, Cheeks testified that he relied on the bollards for safety and "instinctively tried to run behind a bollard, because he assumed they were there for protection." *Id.* But, the bollards in *Cheeks* did not fully block the entrance, an area that each customer had to traverse in order to enter and exit the store. *Id.* Notwithstanding that no bollards were erected at all at the Biloxi Walgreens, this accident occurred on the side of the store, immediately

adjacent to the entrance. The district court likened the inadequate bollards in *Cheeks* to a defective sidewalk curb, such as one that is sloped or broken up so as to not be functional to stop a driver should he or she hit it. We agree with this assessment. O'Bryant did not argue at the district court, nor in his principal brief to this court, that the curb was defective as to this purpose. He merely calls the curb, in and of itself, inadequate without elaboration. Furthermore, despite Walgreens's testimony that the curb was a safety measure and the presence of the amenities provided on the sidewalks trimming the perimeter of the store, O'Bryant did not provide evidence to support the notion that Walgreens can guarantee that patrons would utilize these amenities, thereby creating a hazard and exposing patrons to a possible danger.

In *Buffalo Services*, Smith's argument in that case is essentially the same argument that O'Bryant asserts now: the storeowner has breached its duty to make the premises reasonably safe for invitees by failing to erect vertical bollards, parking stops, or other physical barriers "in order to prevent the encroachment or obstruction of pedestrian ways by cars." *Buffalo Servs.*, 227 So. 3d at 1097. But, as the Supreme Court of Mississippi held there, a plaintiff "cannot rely on the lack of bollards, parking stops, or other physical barriers in front [of the store] as evidence of negligence . . . ." because by default, the store owner is under no obligation to do so. *Id.* at 1098.

O'Bryant also argues that the district court erroneously relied on the "open and obvious" doctrine when it declared that "[the] curb is not a hidden condition, let alone a dangerous one," that "[a] curb provides no false illusion of safety," and that "it is patently obvious that a vehicle *could* drive over it." *O'Bryant v. Walgreen Co.*, 387 F. Supp. 3d 693, 702 (S.D. Miss. 2019) (emphasis in original). This argument fails for the same reason that O'Bryant says that the district court erred: the doctrine was expressly abolished by the Supreme

Court of Mississippi in *Tharp v. Bunge Corp.*, 641 So. 2d 20 (Miss. 1994). Neither Walgreens nor CBRE asserted that doctrine as a defense. Moreover, the court's statements were not a finding that O'Bryant knew and appreciated that the curb was dangerous. In our view, the court was simply stating that the curb in and of itself is not a hidden danger or peril that triggered Walgreens's duty to warn patrons that its sidewalks are not reasonably safe. Additionally, it appears to us that the district court was merely highlighting that the curb is not the type of hazard that could be construed as a premises owner undertaking extra steps to protect patrons entering or exiting its store.

Perhaps the largest area of tension between this case and the other cases that precede it is that the injuries sustained by the plaintiffs in those cases occurred when the plaintiffs were *inside* the store, not outside. In turn, the likely reason why Mississippi courts could consistently find no liability on the part of the store is because, even without physical barriers such as bollards and parking stops, there is a clear bifurcation between the parking lot and the walled exterior of the store. In this case, O'Bryant was standing outside smoking a cigarette. He had no reasonable expectation that he was in danger or that he could have been exposed to a danger. However, in the same way, the Biloxi Walgreens did not anticipate that possibility either. *See Corley*, 835 So. 2d at 37–38 (explaining that the store owner must have "cause to anticipate" the wrongful or negligent act of a third party on his premises). Even with the prior accident that occurred at that particular store in July 2014, no patrons were injured. So, when construing the facts in the light most favorable to the appellees with respect to O'Bryant's cross motion for summary judgment, it is reasonable to infer that Walgreens did not need to erect such barriers when the driver in the July 7, 2014 incident admitted that "she was pulling into the space real slow and when she went to hit the brake to stop she hit the gas and her vehicle lunged forward and penetrated the building." What happened there

is closely akin to what happened here except, this time, a person was injured who just so happened to be O'Bryant. Walgreens had no prior indication that such an incident would happen. Again, under Mississippi law, the absence of physical barriers cannot impute liability to the store for any injuries caused by the errant driving of a third party.

In sum, we conclude that the appellees did not assume the duty of protecting its patrons from the errant driving of third parties. Accordingly, summary judgment in favor of Walgreens and CBRE was proper.

## B. The district court did not abuse its discretion when it excluded evidence of prior accidents at other Walgreens locations nationwide

A district court's exclusion of evidence is reviewed for an abuse of discretion. *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 387 (5th Cir. 2009). A court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *Id.* If we find that there was an abuse of discretion, the harmless error doctrine will preclude reversal except where the error affects the substantial rights of the complaining party. *Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 844 (5th Cir. 2000).

O'Bryant argues that the district court erroneously excluded evidence of similar incidents that establish notice of a dangerous condition and foreseeability of harm. He sought to admit evidence of similar accidents that occurred throughout the country, from at-least 83 different Walgreens locations between 2011-2018. In turn, he argues that the district court misapplied Mississippi law that allows the introduction of evidence of similar incidents to prove notice of a dangerous condition.

However, O'Bryant misreads Mississippi law and broadens its scope in doing so. Mississippi law does allow for the admittance of evidence of similar incidents but, *at the same location as the site in question. See Double Quick, Inc. v. Moore*, 73 So. 3d 1162, 1166-67 (Miss. 2011); *see also Corley v. Evans*,

835 So. 2d 30, 37–38 (Miss. 2003); *Yoste v. Wal-Mart Stores*, 822 So. 2d 935, 936 (Miss. 2002). O'Bryant sought to admit evidence of storefront crashes from different Walgreens stores throughout the country. Indeed, O'Bryant cited to cases from a number of foreign jurisdictions such as Connecticut, Arizona, Tennessee, Alabama, Florida, and others, that are more permissive in the evidence they choose to admit. To be sure, it is the prerogative of those foreign jurisdictions to be so permissive as it is as much Mississippi's prerogative to be more restrictive. As the district court properly noted, those jurisdictions have no bearing on the application of Mississippi premises liability law and the interpretation thereof. *O'Bryant*, 387 F. Supp. 3d at 701.

In sum, the district court did not abuse its discretion when it refused to admit O'Bryant's proffer of evidence of Walgreens storefront crashes from around the country.

**C. The district did not abuse its discretion when it denied O'Bryant's motion to strike the appellees' answer for alleged discovery abuses**

A district court's discovery rulings, including whether to administer discovery sanctions, are also reviewed for an abuse of discretion. *Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 315 (5th Cir. 2013).

"Federal Rule of Civil Procedure 37(b) authorizes sanctions for failure to comply with discovery orders." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763 (1980). "The Rule . . . permits the trial court to strike claims from the pleadings, and even to 'dismiss the action ... or render a judgment by default against the disobedient party.'" *See Id.* (quoting *Nat'l Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639 (1976) (per curiam)). Such remedies are considered to be severe and require a finding of bad faith or willful misconduct. *See Smith Fuller, P.A. v. Cooper Tire & Rubber Co.*, 684 F.3d 486, 488 (5th Cir. 2012). "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who

might be tempted to such conduct in the absence of such a deterrent.'" *Roadway Exp., Inc.*, 447 U.S. at 763–64 (quoting *Nat'l Hockey League*, 427 U.S. at 643).

A party may, however, resist discovery. The "party resisting discovery must show specifically how . . . each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (internal quotations omitted); *see* Fed. R. Civ. P. 26(b)(1).

The record shows that O'Bryant moved the district court for Rule 37(b) discovery sanctions against Walgreens on February 5, 2019, a month before its March 4, 2019 "Motion for Partial Summary Judgment, or in the Alternative, Motion to Strike for Discovery Abuses Against Walgreen Co." In that first motion for 37(b) discovery sanctions, O'Bryant laid out three options of relief he deemed sufficient, in order of most to least preferred. The "preferred option" was for the court to order Walgreens "to produce the responsive documents at its own costs within five days and allow the plaintiff to retake the 30(b)(6) deposition" regarding Walgreens's knowledge of the frequency of storefront crashes. This preferred option closely mirrors, if not being the exact same as, the complained of Walgreens action and requested court ordered remedy that O'Bryant set forth in his "Motion to Compel Rule 30(b)(6) Deposition of Walgreen Co." In the motion for 37(b) discovery sanctions, one of the other two lesser preferred alternative options was for the court to "[s]trike Walgreens' responsive pleadings and enter a default judgment against it for liability for both negligence and gross negligence, as well as a judgment for economic damages, and have a trial on non-economic damages and punitive damages." This second-choice option resurfaced in O'Bryant's motion for summary judgment as an alternative remedy which he claims that the district court improperly denied.

No. 19-60363

O'Bryant argues that the district court erred in not striking Walgreens's responsive pleadings and entering default judgment against it. However, there is a stark procedural difference between the February 5 motion for 37(b) sanctions and the later motion for partial summary judgment which, in the alternative, was a motion to strike Walgreens's pleadings for discovery abuses: the initial motion for 37(b) sanctions was properly filed during the course of discovery and handled by the magistrate judge. The motion for partial summary judgment alternatively seeking the most severe discovery sanctions against Walgreens was filed directly in the district court 24 days *after* the magistrate judge issued his ruling on the various motions that were before the court.

In that February 8, 2019 order, the magistrate judge ruled on five motions, four filed by O'Bryant and one filed by Walgreens: (1) O'Bryant's Motion to Compel Rule 30(b)(6) Deposition of Walgreens; (2) O'Bryant's Second Motion to Compel Discovery Responses from CBRE; (3) Walgreens's Motion for Clarification; (4) O'Bryant's Motion for Rule 37(b) Sanctions; and (5) O'Bryant's Unopposed Motion for Leave to File Exhibit Under Seal. He granted the two motions to compel which required (1) Walgreens to cooperate with O'Bryant to schedule the 30(b)(6) deposition related to Walgreens's knowledge of storefront crashes at its stores; and (2) CBRE to provide the requested information related to storefront crashes within fourteen days from the date of the order.

Additionally, the magistrate judge declared O'Bryant's motion for 37(b) discovery sanctions and the motion for filing exhibits under seal as moot because O'Bryant voluntarily withdrew that motion. Walgreens contends that the district court did not err by declining to strike its pleadings and enter default judgment because the district court did not have jurisdiction to do so. Indeed, the procedure for handling discovery motions in this case was for

12

discovery motions to be heard before a magistrate judge and then the party dissatisfied with the ruling can appeal it to the district court. *See* 28 U.S.C. § 636(b)(1)(A); *see also Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 379 (5th Cir. 1989) ("[Appellant] did not appeal the magistrate's denial of his motion to the trial court, thus we are without jurisdiction to consider it."). But, here there was nothing for O'Bryant to appeal because he voluntarily withdrew the motion for 37(b) sanctions. The magistrate judge declared it moot only to underscore the fact that while the motion was filed and pending before the court, that requested relief no longer remained before the court to adjudicate. In turn, O'Bryant had enough time to file the motion that renewed his request for discovery sanctions before the period of discovery lapsed. The initial motion for 37(b) sanctions was not dismissed with prejudice that would have precluded the filing of a second motion renewing those requests for sanctions. What's more, the district court granted O'Bryant's preferred relief even though it did not substantively rule on the 37(b) discovery sanctions motion. Accordingly, there is no abuse of discretion.

Assuming arguendo that the district court did have jurisdiction to consider that motion with respect to the request of striking Walgreens's pleadings and entering default judgment against Walgreens, the court would have had to find that Walgreens acted in bad faith in order to justify imposing those drastic sanctions. *See EEOC v. Gen. Dynamics Corp.*, 999 F.2d 113, 117-19 (5th Cir. 1993); *see also Frame v. S-H, Inc.*, 967 F.2d 194, 203 (5th Cir. 1992) ("[S]triking pleadings . . . is a draconian remedy of last resort."). O'Bryant argues that the district court erred for several reasons such as Walgreens's "refus[al] to designate a corporate representative to testify on certain topics in willful contempt of the District Court's Order," and the delayed production of documents which O'Bryant characterizes as "deliberate obfuscation" and "contumacious." But, in ruling on several motions to compel filed by O'Bryant,

the magistrate judge never found Walgreens or CBRE to have acted in bad faith or with willful disregard for the court's orders. Again, for the reasons already stated, we hold that the district court did not abuse its discretion when it declined to issue sanctions against the appellees.

## IV.     CONCLUSION

For the reasons aforementioned, we AFFIRM the district court's grant of summary judgment in favor of Walgreen Co. & CBRE Group.